FILED
 2009 Mar-16  PM 02:51
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| TEENA L. CANTRELL,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 07-G-1451-NW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

The plaintiff, Teena L. Cantrell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ J. Edward Tease determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination

of impairments considered "severe," she did not suffer from a listed impairment.

In his decision, the ALJ found that:

> Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21 and 202.22 when she was a "younger" individual and by Medical Vocational Rule 202.14 and 202.15 when she became "closely approaching advanced age."

[R. 16A]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is

>not required to produce additional, objective proof of the pain itself. See 20
>CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

>It is established in this circuit that if the Secretary fails to articulate reasons
>for refusing to credit a claimant's subjective pain testimony, then the
>Secretary, as a matter of law, has accepted that testimony as true. Implicit in
>this rule is the requirement that such articulation of reasons by the Secretary
>be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon

a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or

other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

### DISCUSSION

The ALJ found that the plaintiff has the following impairments:

> obesity; relapsing remitting multiple sclerosis; cervical myelitis; headaches; lumbar strain/lumbago with a broad-based left paracentral protrusion at L5-S1; and residuals from a trimalleolar fracture dislocation of her left ankle.

[R. 13].  In applying the 11th Circuit's pain standard, the ALJ found that:

> Although the claimant meets part one of this standard, with evidence of underlying medical conditions, she fails to meet part two.  Medical evidence shows the claimant has underlying medical conditions, but it does not support her allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of substantial gainful activity.  These allegations are inconsistent with the claimant's daily living activities including many physical activities such as performing housework and church work.  She watches television and is home alone all day while her husband is at work.  The claimant taught for 26 years before taking retirement.

[R. 16].  This finding is not supported by substantial evidence.

The record includes results of four MRIs which document the plaintiff's underlying conditions:

1. An August 23, 2001, MRI of the brain showed areas of abnormal signal strength within the perventricular white matter and involving the corpus callosum.  Mathew M. Merritt, M.D., concluded that the images "are highly suggestive of multiple sclerosis."  [R. 280-281].

2. A September 5, 2002, MRI of the brain demonstrated "[m]ultiple foci of signal abnormality with the brain parenchyma . . . consistent with the history of multiple sclerosis.  There has been no interval change since August 23, 2001."  [R. 278].

3. A November 15, 2002, MRI of the cervical spine showed a focal area of increased T2 signal within the cervical cord, which "may represent a focal plaque related to a demyelinating process."  [R. 277].

4. A January 26, 2006, MRI of the lumbar spine demonstrated a broadbased left paracentral protrusion at L5-S1.  The "[d]iffuse bulge at this level leads to mild to moderate left foraminal narrowing with slight crowding of the exiting root."  [R. 217].

The ALJ found that the plaintiff meets part one of the pain standard, but found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible."  [R. 15].  Specifically, the ALJ found her allegations of disabling pain "are inconsistent with the claimant's daily living activities including many physical activities such as performing housework and church work.  She watches television and is home alone all day while her husband is at work."  [R. 16].  This is a mischaracterization of the plaintiff's testimony.

In her Physical Activities Questionnaire, the plaintiff stated that in "doing light chores around the house," she rests every half-hour for 15 to 30 minutes. [R. 75]. At the ALJ hearing, the plaintiff testified that she has to have help with some chores. "I have a housekeeper that comes every two weeks, she helps me do heavy stuff, like mopping, and vacuuming, anything that, you know, is bending over [sic] cleaning things. I have a hard time doing that." [R. 291]. As for the plaintiff's church work, she testified:

> I do do some things at my church <u>when I'm able to.</u> I'm called on a lot to do things at church, but I do it only when I'm able. Fatigue is a huge problem. That was one of the problems at, at school. <u>I could not last all day long</u> and it got to the point where I couldn't, I couldn't do my job.

[R. 288](emphasis added). As for other outside activities, the plaintiff testified:

> I, well, this past Monday I did judge a spelling bee at the elementary school. I did go to two ball games. I have family members whose children play ball and I went to two games, but it's really, I have to use a cane to get up, it's really hard for me to get up a stadium. We had to give up our reserve seats at the Alabama games because I can't, I can't get up the steps anymore. I can't climb up the steps.

[R. 291].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other

10

sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>.  . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and

steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

## CONCLUSION

No vocational expert testified at the ALJ hearing, so there is no expert testimony as to whether the claimant can perform any jobs if her subjective testimony is credited. Consequently, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

**DONE and ORDERED 16 March 2009.**

**UNITED STATES DISTRICT JUDGE**
**J. FOY GUIN, JR.**